■ HENRIETTA BROADIE, Respondent, v ST. FRANCIS HOSPITAL, Defendant, and MEERA LOBO, Appellant. [807 NYS2d 656]—

In an action to recover damages for medical malpractice and wrongful death, etc., the defendant Meera Lobo appeals from so much of an order of the Supreme Court, Dutchess County (Pagones, J.), dated June 25, 2004, as denied those branches of her motion which were pursuant to CPLR 4401 and 4404 (a) for judgment as a matter of law or, in the alternative, to set aside a jury verdict in favor of the plaintiff and against her and for a new trial.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the motion which was pursuant to CPLR 4401 and 4404 (a) for judgment as a matter of law is granted, that branch of the motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict and for a new trial is denied as academic, and the complaint is dismissed.

The plaintiff commenced this action on behalf of herself and the estate of her deceased 23-year-old son. The plaintiff's decedent suffered from chronic morbid obesity. On August 18, 1998, he went to the emergency room of St. Francis Hospital (hereinafter the hospital) complaining of shortness of breath and extensive swelling of his entire body. Upon his admission, various tests were performed, among them tests for arterial blood gases and chest X rays. The defendant Dr. Meera Lobo, the attending physician who admitted the decedent to the hospital, diagnosed his condition as, inter alia, hypoventilation syndrome, which accounted for the abnormally high levels of carbon dioxide in his blood, a condition typical of morbidly obese patients. Oxygen and a diuretic were prescribed immediately. The decedent was evaluated by a number of specialists during

the course of his hospital stay, and the swelling reduced. His oxygenation levels returned to normal limits. Pneumonia was ruled out, and signs of possible congestive heart failure resolved. The results of an echocardiogram performed by a cardiologist on August 25, 1998, indicated that the left ventricle of the decedent's heart was normal and that there was trace pericardial fluid. The cardiologist did not recommend any further tests or procedures.

During his stay at the hospital, the decedent exhibited recalcitrance in following the medical advice he was given. For example, he declined to be examined immediately before his admission, he "absolutely refused" a device that would force oxygen into his lungs, and he was "totally against" recommendations that he attend an obesity clinic.

Consistent with his express wishes, the decedent was discharged on August 28, 1998, in "fair" condition. He elected to follow-up with his own physician and was prescribed a diuretic to continue taking at home. Home health care was also arranged. The decedent, against medical advice, refused home oxygen. Five days later, on September 2, 1998, the decedent died at home from congestive heart failure. An autopsy revealed, inter alia, massive anasarca (fluid retention), including 250 cubic centimeters in the pericardium.

To be awarded judgment as a matter of law pursuant to CPLR 4401 or 4404 (a), a defendant has the burden of establishing that there is no rational process by which the jury could find for the plaintiff against the moving defendant (see Wong v Tang, 2 AD3d 840 [2003]; Biggs v Mary Immaculate Hosp., 303 AD2d 702, 703 [2003]). The plaintiff's evidence must be accepted as true, and the plaintiff is entitled to every favorable inference which can reasonably be drawn from the evidence (see Wong v Tang, supra). Here, the defendant met her burden. Notably, the plaintiff's expert, Dr. Ronald Linder, failed to establish that the claimed departures from the appropriate standard of care were proximate causes of the decedent's death. To establish that connection, the jury could have relied only on speculation.

First, Dr. Linder opined that Dr. Lobo departed from accepted medical standards by failing to perform one of two risky and invasive procedures to remove the 250 cubic centimeters of fluid in the decedent's pericardium. Although that amount of fluid was measured upon his autopsy when he died some five days after returning home, the medical records demonstrate that three days before the end of his hospital stay he had only trace amounts of fluid in his pericardium. Thus, for the jury to have concluded that the failure to remove the fluid was a proximate

cause of the decedent's death, it would have had to first draw an inference that the fluid accumulated in the three days before the decedent was discharged. There is no evidence in the record that would support such an inference. In fact, the record supports only a conclusion that the fluid accumulated after the decedent was discharged, because of the decedent's failure to take his medications as prescribed, one of which was a diuretic, his consumption of large amounts of water and juice at home during the five days preceding his death, and his refusal to accept oxygen.

Second, the plaintiff argued at trial that Dr. Lobo's discharge of the decedent on August 28, 1998, was another departure from standard medical care. Even if we were to accept that contention, Dr. Linder did not testify that, had the appellant not discharged the decedent, his life would have been extended, that his pain or suffering would have been reduced, or that his death would have been prevented. Thus, he did not relate the allegedly improper discharge to the injuries claimed. Therefore, the plaintiff's failure to establish proximate cause by legally sufficient evidence requires, as a matter of law, dismissal of the complaint (*see Biggs v Mary Immaculate Hosp., supra* at 704).

Were we not dismissing the complaint pursuant to CPLR 4401 and 4404 (a), we would reverse, set aside the verdict as against the weight of the evidence, and grant a new trial on the issue of liability. Crane, J.P., Mastro, Fisher and Lunn, JJ., concur.